**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| HUMAN DIFFERENTIAL INTELLIGENCE LLC, | |
| *Plaintiff*, | Civil Action No: 6:20-cv-00310-ADA |
| v. | PATENT CASE |
| BED BATH & BEYOND, INC., | JURY TRIAL DEMANDED |
| *Defendant*. | |

**DEFENDANT BED BATH & BEYOND, INC.'S RENEWED MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

        A.      The Patents-in-Suit and CAPTCHA ............................................................ 2

        B.      HDI's Amended Infringement Allegations.................................................... 4

III.    LEGAL STANDARD................................................................................................. 6

        A.      Motion to Dismiss......................................................................................... 6

        B.      Direct Infringement....................................................................................... 6

        C.      Indirect Infringement .................................................................................... 8

IV.     ARGUMENT ............................................................................................................. 9

        A.      The Amended Complaint Fails to State a Claim for Direct Infringement.............. 9

        B.      The Amended Complaint Fails to State a Claim for Indirect Infringement ........ 15

V.      CONCLUSION......................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ...................................................................6, 7, 9, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................6

*Confident Techs., Inc. v. Fandango Media, LLC*,
   No. LA CV:18-03035-JAK(AGRx), 2018 WL 6430539 (C.D. Cal. Aug. 20, 2018)..14, 15, 16

*Deep9 Corp. v. Barnes & Noble, Inc.*,
   No. C11-0035JLR, 2012 WL 4336726 (W.D. Wash. Sep. 21, 2012) ...................................12

*Desenberg v. Google, Inc.*,
   392 F. App'x 868 (Fed. Cir. 2010) ............................................................................9, 12, 13

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004)..............................................................................................8, 15

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
   845 F.3d 1357 (Fed. Cir. 2017)...............................................................................................8

*Global-Tech Appliances, Inc. v. Seb S. A.*,
   563 U.S. 754 (2011)...................................................................................................................9

*Limelight Networks*, *Inc. v. Akamai Techs., Inc.*,
   134 S. Ct. 2111 (2014)..........................................................................................................8, 15

*LLC v. Infosync Servs., LLC*,
   No. 3:10-CV-1994-D, 2014 WL 4988287 (N.D. Tex. Oct. 7, 2014) .......................................7

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016)..........................................................................................7, 11

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)...............................................................................................8

*R+L Carriers, Inc. v. Drivertech LLC* (*In re Bill of Lading Transmission & Processing Sys.
   Patent Litig.*),
   681 F.3d 1323 (Fed. Cir. 2012)...............................................................................................8

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) .................................................................................................10

*Renhcol Inc. v. Don Best Sports*,
    548 F. Supp. 2d 356 (E.D. Tex. 2008) ............................................................................6

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004) ......................................................................................14

*State Nat'l Ins. Co. v. Access Gen. Agency, Inc.*,
    No. 1:04-CV-2594-JTC, 2006 WL 8432786 (N.D. Ga. Apr. 13, 2006) ................................12

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007) ........................................................................................6

**Statutes**

35 U.S.C. § 271(a) ........................................................................................................6, 7

35 U.S.C. § 271(b) ..........................................................................................................8

35 U.S.C. § 271(c) ..........................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 6, 9, 10, 16

## I.    INTRODUCTION

Human Differential Intelligence LLC's ("HDI") filed this lawsuit on April 22, 2020, accusing Defendant Bed Bath & Beyond, Inc. ("BBB") of direct and indirect infringement of U.S. Patent Nos. 8,752,141 (the "'141 Patent") and 9,192,861 (the "'861 Patent" and collectively, the "Patents-in-Suit"). *See* Dkt. 1 (the "Complaint"). HDI's Complaint accused BBB of infringing the Patents-in-Suit by virtue of using Google's reCAPTCHA v2 framework ("reCAPTCHA framework") on its websites. *Id*.

BBB filed a motion to dismiss for failing to plausibly allege direct or indirect infringement of the Patents-in-Suit as BBB clearly did not and could not "direct or control" Google's reCAPTCHA service. *See generally* Dkt. No. 9. In response, HDI filed an amended complaint seeking to overcome its pleading deficiencies by alleging that BBB purportedly "directs and controls" Google's actions because it "obtains an individualized API key pair [that] invoke[s], implement[s], and operate[s] the reCAPTCHA service on Defendant's website(s) or mobile application." Dkt. No. 13 (the "Amended Complaint") at ¶¶ 17-19.

BBB again respectfully requests that this Court dismiss all claims in HDI's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure for failure to state a claim upon which relief can be granted. The Amended Complaint still fails to plausibly allege direct or indirect infringement of the Patents-in-Suit. While BBB implements Google's reCAPTCHA v2 framework on the accused website, the Amended Complaint does not allege what claim steps are performed by BBB and what steps are performed by Google, such that Google's performance is attributable to BBB. Moreover, the mere use by BBB of a Google API is insufficient to constitute "direction and control" or a "joint enterprise" as required for joint infringement. *Id*. Absent direct infringement, there can be no indirect infringement of the Patents-in-Suit.

1

## II.     STATEMENT OF FACTS

### A.     The Patents-in-Suit and CAPTCHA

The Patents-in-Suit relate to methods of implementing CAPTCHA technology. CAPTCHA is an acronym for "Completely Automated Public test to Tell Computers and Humans Apart" and is commonly used by computer systems to tell humans and computers apart, and is often used to protect websites from spam and abuse. '141 Patent at 1:43-45. The Amended Complaint provides an example of a CAPTCHA used on BBB's website:



Amd. Comp. at ¶ 20.

The '141 Patent is directed at an image-based CAPTCHA that progressively reveals information from an image over time so as to differentiate between human and non-human users, as illustrated below in Claim 1:[1]

    1. A method of testing recognition of images for a Completely Automatic Public Turing Test To Tell Humans And Computers Apart (CAPTCHA) system comprising:

---

[1] The '141 Patent, entitled "Methods for Presenting and Determining the Efficacy of Progressive Pictorial and Motion-Based Captchas," issued on June 10, 2014, from an application filed on June 29, 2009. The '141 Patent claims priority to an application filed on June 27, 2008.

    a.    automatically electing an electronic image for a participant with a computing system, wherein said electronic image comprises a set of imagery data other than words, and wherein said electronic image is configured such that a subset of said set of imagery data for said electronic image can be made perceptible in a first image state;

    b.    associating said electronic image with one or more concepts;

    c.    ***presenting said electronic image in said first image state and progressively revealing information over a first time period within an interface for said participant using said computing system***;

    d.    automatically processing responses from the participant with the computing system to correlate an accuracy of guesses from said participant for said one or more concepts associated with said electronic image; and

    e.    calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time.

*See* '141 Patent, claim 1 (emphasis added).

The '861 similarly recites a method of CAPTCHA.[2] Here, however, users are not presented with images to identify, but rather are shown "a manipulation challenge" involving "instructions" they must follow. The method then "determin[es] if said user movements and/or manipulations from the user meet a required threshold for satisfying said set of manipulation instructions to qualify said user as a human", as illustrated below in Claim 1:

1. A method of providing a motion and/or orientation-based Completely Automatic Public Turing Test To Tell Humans And Computers Apart (CAPTCHA) challenge on a portable computing device comprising:

    a.    automatically electing a manipulation challenge for a user with the portable computing device, ***wherein said manipulation challenge includes a set of physical manipulation instructions for the portable computing device for the user***;

    b.    automatically processing sensory data associated with user movements and/or manipulations of the portable computing device; and

    c.    automatically determining if said user movements and/or manipulations from the user meet a required threshold for satisfying said set of manipulation instructions to qualify said user as a human.

---

[2] The '861 Patent, entitled "Motion, Orientation, and Touch-Based Captchas," is a divisional of the '141 Patent, was filed on March 24, 2014, and issued on November 24, 2015. The '861 Patent claims priority to the same application filed on June 27, 2008.

'861 Patent, claim 1 (emphasis added).

**B.     HDI's Amended Infringement Allegations**

HDI's Amended Complaint contains 59 additional paragraphs as compared to the original Complaint. However, none of these allegations address the original Complaint's shortcomings. For example, 14 of the 59 "new" paragraphs consist of HDI's preliminary infringement claim charts. *Id*. at ¶¶ 22-35. Another 23 paragraphs are dedicated to expounding on the claim that, because "Defendant operates and/or is responsible for the operation of the reCAPTCHA v2 . . . [it therefore] ***controls and instructs*** the operation of the reCAPTCHA v2 service on Defendant's website(s)." *Id*. at ¶¶ 17-19 (emphasis added); *see also* ¶¶ 36-55. HDI also makes allegations in two "new" paragraphs that Google was made aware of the '141 Patent and that certain Google-owned patents or patent application cite to it. *Id*. at ¶¶ 58-59. The remaining "new" paragraphs consist of expanding the two generalized counts of infringement in the Original Complaint into six individualized allegations of direct and indirect infringement in the Amended Complaint. *Id*. at ¶¶ 60-92.

Indeed, HDI's Amended Complaint relies on the same basic facts presented in the original Complaint. For example, like the original Complaint, HDI's Amended Complaint alleges that BBB directly and indirectly infringes the asserted claims by "directing customers, end-users, and/or other third parties" to BBB's website to "solve a reCAPTCHA v2 to access certain protected resources or content." Amd. Comp. at ¶¶ 66, 81. HDI's Amended Complaint also alleges that "Defendant implements Google's reCAPTCHA v2 framework" and that by "register[ing] a reCAPTCHA account with Google . . . [BBB] obtains an individualized API key pair." *Id*. at ¶¶ 16, 18. BBB then allegedly implements this "individualized API key . . . into the architecture, design, and construction" of its website. *Id*. at ¶ 19. The Amended Complaint also points to same

alleged source code from BBB's website that was identified in the original Complaint, reproduced below.

```
{"src":"https://www.mapquestapi.com/search/v2/radius","reverseURL":"https://www.mapquesta
pi.com/geocoding/v1/reverse","jsSrc":"https://api.mqcdn.com/sdk/mapquest-
js/v1.2.0/mapquest.js","key":"Gmjtd|lu6120u8nh,2w=o5-
lwt2l","tableName":"mqap.34703_AllInfo","maxMatches":20,"ambiguities":"ignore","units":"m
"},"webInstantCredit":
{"adsUrl":"https://c.comenity.net/bedbathandbeyond/pub/apply/Apply.xhtml"},"recaptcha":
{"enable":true,"scriptId":"recaptchaScript","src":"https://www.google.com/recaptcha/api.j
s","siteKey":"6LdD2woTAAAAAJVqBmfM4jQaokGCYyg8DQPjW6-j","containerClass":"g-
recaptcha"},"socialAnnex":
{"requestUrl":"https://s22.socialannex.com/api/product/photos/9411181/:productCode/8749bd
dc9798a71a8e30b4738b4f7956","productComparisonClass":"sa_s22_comapare_page_slider
s22_multiple_product_","siteId":
{"US":9411181,"Baby":9411351,"Ca":9411361},"src":"//cdn.socialannex.com/partner/9411181/b
bb-feo/universal.js","scriptId":"socialAnnexContent","pageType":
{"CLP":3,"SEARCH":3,"HOMEPAGE":1,"REVIEWYOURPRODUCTS":9,"GALLERY":7,"PLP":3,"COLLEGE":3,"
REGISTRYDASHBOARD":1,"PRODUCTCOMPARISON":2,"COLLEGELOKBOOK":7,"PDP":2},"homePageClass":"s
a_s22_instagram_home","orderHistoryClass":"sa_s22_photoupload_product_holder","defaultCla
ss":"sa_s22_instagram_product","orderPageId":"sa_track","socialAnnexPrefix":"sa_","token"
:"8749bddc9798a71a8e30b4738b4f7956","categoryClass":"sa_s22_instagram_category","id":"sa_
s22_instagram","defaultId":"sa_s22_instagram"},"socialAnnexPhotoRegistry":
{"baseUri":"https://s22.socialannex.com/v2/api/photoregistry/images/9411181"},"narvar":
{"url":"http://bedbathandbeyond.narvar.com/bedbathandbeyond/tracking/"},"merkle":
{"src":"https://cdn.merklesearch.com/merkle_track.js","merchantId":"bedbathbeyond","loadI
nHead":false},"quantumMetric":{"src":"https://cdn.quantummetric.com/qscripts/quantum-
```

*Id.* at ¶ 16. Yet, it is evident that the reCAPTCHA API "source code" identified by HDI includes JavaScript code provided to the end user by Google from www.google.com web servers. *Id.*

None of these "new" allegations alter the analysis. As was the case with the original Complaint, HDI's Amended Complaint continues to allege that unspecified "source code . . . directs and controls the electing, associating, presentation, processing, and calculation of information related to the graphical/pictorial and/or motion-based CAPTCHA presented to a user of Defendant's website(s)." *Id.* at ¶ 19. The Amended Complaint continues to mischaracterize BBB's use of "an individualized API key," distributed by Google and implemented on BBB's website as exerting "direction or control" over Google. *Id.* at ¶¶ 18-19. And the Amended Complaint continues to avoid alleging facts showing that BBB performs each of step of the asserted claims or indicate whether or not Google performs any step.

### III.    LEGAL STANDARD

#### A.    Motion to Dismiss

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the Amended Complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotations omitted).

#### B.    Direct Infringement

All claims of the Patents-in-Suit are method claims. Direct infringement of a method claim under 35 U.S.C. § 271(a) "occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*); *see, also*, *Renhcol Inc. v. Don Best Sports*, 548 F. Supp. 2d 356 (E.D. Tex. 2008) (explaining that the "'[T]he concept of "use" of a patented method or process is fundamentally different from the use of a patented system or device.'").

Where more than one entity is involved in performing the steps of a claimed method, the Federal Circuit, sitting *en banc*, explained that an entity may be held responsible for others' performance of method steps in two sets of circumstances: "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Akamai*, 797 F.3d at 1022.

6

Therefore, a claim of joint infringement "requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citing *Akamai*, 797 F.3d at 1022).

Courts consider general principles of vicarious liability to determine if a single entity directs or controls the acts of another. *Akamai*, 797 F.3d at 1022. Regarding whether a single actor directed or controlled the acts of third parties, the Federal Circuit has held that: (1) "an actor is liable for infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method," and (2) "liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id*. at 1023. The existence of a joint enterprise for purposes of divided infringement—such that the actors therein are "each liable for the steps performed by the other"—requires proof of four elements: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id*. at 1023. *See, also*, *B-50.com, LLC v. Infosync Servs., LLC*, No. 3:10-CV-1994-D, 2014 WL 4988287, at *13 (N.D. Tex. Oct. 7, 2014) ("There is no question that the Federal Circuit follows the 'control or direction' test, and that this 'standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method.'")

C.      **Indirect Infringement**

Even if an entity does not directly infringe a patent, an entity that "actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Liability for induced infringement under § 271(b) "must be predicated on direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement."). Additionally, "[t]he patentee must also show that the alleged infringer possessed the requisite intent to induce infringement," which "requires that the alleged infringer 'knew or should have known his actions would induce actual infringements.'" *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* in relevant part)). "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (alterations in original) (internal quotation marks and citations omitted).

Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." *R+L Carriers, Inc. v. Drivertech LLC* (*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*), 681 F.3d 1323, 1337 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(c)). For contributory infringement, a "violator of § 271(c) must know 'that the combination for which his component was especially

8

designed was ***both patented and infringing***.'" *Global-Tech Appliances, Inc. v. Seb S. A.*, 563 U.S. 754, 763 (2011) quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S., at 488, 84 S.Ct. 1526 (emphasis added).

## IV.    ARGUMENT

### A.    The Amended Complaint Fails to State a Claim for Direct Infringement

HDI's Amended Complaint still fails to allege that BBB performs each and every step of the claimed method because it cannot do so. *See Akamai*, 797 F.3d at 1022; *Desenberg v. Google, Inc.*, 392 F. App'x 868, 870–71 (Fed. Cir. 2010) (affirming grant of Rule 12(b)(6) motion to dismiss for failure to state a claim for infringement of a patented method because the complaint failed to allege that the infringer performed all the steps of the claimed method or that the infringer directed or controlled the performance by multiple parties of all the steps of the claimed method). Nor could it do so. For example, BBB does not "automatically elect[] an electronic image," "assosicat[e] said electronic image with one or more concepts," "automatically process[] responses form the participant . . . to correlate an accuracy of guesses," "calculat[e] a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time," provide a "manipulation challenge for a user," or "automatically process[] . . . user movements and/or manipulations." These steps, as Plaintiff concedes, are performed by Google's reCAPTCHA framework, to the extent that they are performed at all. Amd. Comp. at ¶¶ 22, 26, 28, 30.

HDI specifically identifies Google as the entity that provides the purportedly infringing reCAPTCHA technology and performs the claimed steps, not BBB. *See id.* at ¶ 22 ("Google and/or a Google server(s)/computer(s) . . . ***perform these steps*** or portion thereof . . ." (emphasis added)); *see also id.* at ¶ 18 ("Defendant created or registered a reCAPTCHA account with Google . . . [and] obtains an individualized API key pair"). And the Amended Complaint shows that only a

single line of "source code" is "incorporated" into BBB's website to activate the Google reCAPTCHA framework. *Id* at ¶ 16. The Amended Complaint further shows that the reCAPTCHA API JavaScript code is provided by Google from its www.google.com web servers. *Id.* at ¶ 22 (identifying https://developers.google.com/recaptcha/docs/display). But as that documentation explains, *it is Google* that "[a]utomatically render[s] the reCAPTCHA widget" for a website that includes the Google "JavaScript resource and the `g-recaptcha` tag."

---

## Automatically render the reCAPTCHA widget

The easiest method for rendering the reCAPTCHA widget on your page is to include the necessary JavaScript resource and a `g-recaptcha` tag. The `g-recaptcha` tag is a DIV element with class name `g-recaptcha` and your site key in the `data-sitekey` attribute:

```html
<html>
  <head>
    <title>reCAPTCHA demo: Simple page</title>
    <script src="https://www.google.com/recaptcha/api.js" async defer></script>
  </head>
  <body>
    <form action="?" method="POST">
      <div class="g-recaptcha" data-sitekey="your_site_key"></div>
      <br/>
      <input type="submit" value="Submit">
    </form>
  </body>
</html>
```

Exhibit A at 1.[3] Nevertheless, the Amended Complaint claims that by using this Google widget on their website, BBB necessarily "directs or controls" Google to perform the claimed steps.

---

[3] Cited in Amd. Comp. at ¶ 22 (https://developers.google.com/recaptcha/docs/display). The Court may consider and take judicial notice of the Google documentation repeatedly referenced in and central to the allegations in the Amended Complaint. A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint, or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). That documentation is attached to this Motion as Exhibits A-C.

To the extent any steps are performed by Google, BBB does not "direct or control" Google's reCAPTCHA framework. Nor are Google's actions are attributable to BBB. HDI alleges that BBB "registered a reCAPTCHA account with Google . . . to obtain[] an individualized API key pair," and the "implementation" of this API key "directs and controls" Google. Amd. Comp. at ¶¶ 18-19. But registering for an "API key" for *permission* from Google to use its product is the opposite of exercising *direction or control* over Google for the performance of each claim step. HDI also alleges that BBB "elects which version of reCAPTCHA it wants to implement," and that by implementing Google's "reCAPTCHA v2 technology" BBB directs and controls the "version" and "presentation" of the CAPTCHA on their website. *Id*. This is conclusory legal argument— there are no factual allegations of how requesting a particular version of a CAPTCHA on BBB's website "directs and controls" a third party like Google. BBB simply calls on a publicly available API with a single line of source code—it does not "direct and control" the entity providing the API to take any particular action in response. *See Lyda*, 838 F.3d 1331, 1340 (affirming grant of motion to dismiss where the complaint did allege facts supporting direction or control a third party that allegedly performed the infringing steps). Merely declaring that BBB "implements" a version of reCAPTCHA technology provided to the user by a third party, and that such technology in turn allegedly practices a claimed method, is insufficient to make an allegation of "direction and control."

The same is true with respect to HDI's allegations that Google and BBB are "in a contractual relationship" with Google's reCAPTCHA v2 by virtue of BBB's acceptance of Google's Terms of Service. *See* Amd. Comp. at ¶ 42. HDI alleges no facts regarding this "relationship" that amount to BBB's direction and control of Google to perform the claimed steps. *Id*. Terms of Service are typically unilateral terms, and a defendant's acceptance of Terms of

Service by using a third party's API, and nothing more, does not demonstrate a relationship sufficient for direction or control of the third party for performance of the patented invention. *See, e.g. Deep9 Corp. v. Barnes & Noble, Inc.*, No. C11-0035JLR, 2012 WL 4336726, at *12-13 (W.D. Wash. Sep. 21, 2012) (finding that accepting terms of service was insufficient to meet the standard for direction or control). Although BBB may "stop, limit, and/or refuse to implement" Google's reCAPTCHA v2, that does not direct or control ***Google*** to do anything. Amd. Comp. at ¶ 38. Likewise with HDI's allegations that BBB's indemnification or liability obligations arising out of the Terms of Service convey direction and control. *See id.* at ¶¶ 43-44. An agreement by BBB to indemnify is insufficient to allege that Google is acting as BBB's agent under the law. *Deep9 Corp.* at *12-13. *See, e.g., State Nat'l Ins. Co. v. Access Gen. Agency, Inc.*, No. 1:04-CV-2594-JTC, 2006 WL 8432786, at *2 (N.D. Ga. Apr. 13, 2006) (finding that the parties' indemnity agreement did not create an agency relationship).

Google's Terms of Service, referenced in the Amended Complaint at Paragraph 42, is a typical unilateral agreement that does not convey direction or control to BBB. In fact, they expressly contradict HDI's allegations that BBB has a say in Google's alleged performance of any claim steps, whether that be by contract, agency, or mutual benefit. For example, Google makes clear that customers such as BBB "must agree" to ***their terms*** in order to use the their reCAPTCHA service**:**



**☐ Accept the reCAPTCHA Terms of Service**

By accessing or using the reCAPTCHA APIs, you agree to the Google APIs Terms of Use, Google Terms of Use, and to the Additional Terms below. Please read and understand all applicable terms and policies before accessing the APIs.

Exhibit B.[4] Further, it is *Google* who sets and enforces limits on its customers' use of its APIs in

*its* sole discretion:

> ## Using Google services on behalf of an organization
>
> Many organizations, such as businesses, non-profits, and schools, take advantage of our services. To use our services on behalf of an organization:
>
> - an authorized representative of that organization must agree to these terms
>
> - your organization's administrator may assign a Google Account to you. That administrator might require you to follow additional rules and may be able to access or disable your Google Account.

Exhibit C at 7.[5] And finally, it is *Google* who unilaterally decides whether to "add or remove

features and functionalities", which it does without input from BBB or other customers:

> ## Improve Google services
>
> We're constantly developing new technologies and features to improve our services. For example, we invest in artificial intelligence that uses machine learning to detect and block spam and malware, and to provide you with innovative features, like simultaneous translations. As part of this continual improvement, we sometimes add or remove features and functionalities, increase or decrease limits to our services, and start offering new services or stop offering old ones.
>
> If we make material changes that negatively impact your use of our services or if we stop offering a service, we'll provide you with reasonable advance notice and an opportunity to export your content from your Google Account using Google Takeout, except in urgent situations such as preventing abuse, responding to legal requirements, or addressing security and operability issues.

*Id.* at 3. The Court is thus not obligated to accept HDI's conclusory and incorrect interpretations

of these Terms of Service. When "an allegation is contradicted by the contents of an exhibit

---

[4] Cited in Amd. Comp. at ¶¶ 42-44 (https://www.google.com/recaptcha/admin/create).
[5] Cited in Amd. Comp. at ¶¶ 42-44 (https://policies.google.com/terms).

attached to the pleading, then indeed the exhibit and not the allegation controls." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))

Nor does BBB's use of Google technology constitute a "joint enterprise." HDI alleges that the use of Google's reCAPTCHA results in "benefits" for Google by "training and strengthening" Google's algorithms. Amd. Comp. at ¶¶ 39, 51. This is insufficient to form a joint enterprise. None of the four requisite elements of a joint enterprise are met. HDI has not sufficiently alleged facts showing:

- That Google is contractually obligated to provide any functionality to BBB;
- That Google has a common purpose with BBB in keeping robots from using BBB's website;
- A common pecuniary benefit from BBB restricting access to its website; or
- That BBB has a voice in the architecture of Google's reCAPTCHA framework.

*See Akamai*, 797 F.3d 1020, 1023.

The Terms of Service expressly relied upon by HDI directly contradicts its allegations that BBB has "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." BBB's mere "right to remove" reCAPTCHA from their website is a misapplication of the law. Amd. Comp. at ¶ 52. Removing reCAPTCHA from BBB's website (or Google refusing service to their API) does not constitute having a "voice in the direction" of Google's reCAPTCHA service.

The same infringement allegations purporting to allege joint infringement by use of Google's reCAPTCHA technology have been dismissed for the same reasons in another District. *See Confident Techs., Inc. v. Fandango Media, LLC*, No. LA CV:18-03035-JAK(AGRx), 2018 WL 6430539 (C.D. Cal. Aug. 20, 2018). There, plaintiff alleged it had adequately plead

infringement against defendant because the complaint referred to "Defendant's use of the ReCAPTCHA technology through Defendant's website." *Id.* at *4. The court dismissed the plaintiff's complaint on a 12(b)(6) motion because the complaint did not "allege sufficient facts with respect to the relationship between Defendant and ReCAPTCHA or the one between Defendant and Google." *Id*.

The allegations that were unsuccessful in *Fandango* are like the allegations in this complaint. Here, HDI alleges that Google enjoys benefits such as "using the [reCAPTCHA] solutions to digitize text, annotate images, and build machine-learning datasets. . . " Amd. Comp. at ¶ 39. The plaintiff in *Fandango* similarly alleged that Google "obtains a benefit of data gathered for use in machine learning applications." *Confident Techs.*, 2018 WL 6430539, *4. But that allegation was insufficient because "Plaintiff was unable to identify those steps of the claims that may be performed by Google"; nor could it explain how the Fandango "establishes the timing and performance of such steps." *Id.* It was apparent to the district court in *Fandango* that the allegations did not show that Defendant itself performed each step of the claims. *Id.* Instead, the steps of the asserted claims "could be interpreted to refer to an aspect of ReCAPTCHA that is neither operated nor performed by" Fandango. *Id.* Ultimately, the court determined that the Complaint did not plead facts sufficient to support the requisite "direction or control" or that the parties formed a "joint enterprise."

### B.    The Amended Complaint Fails to State a Claim for Indirect Infringement

Because it fails to state a claim for direct infringement, HDI also fails to state a claim of indirect infringement. Liability for indirect infringement "must be predicated on direct infringement," and as discussed above in Section IV.A., HDI has not sufficiently alleged a claim of direct infringement by any entity. *Akamai Techs.*, 134 S. Ct. at 2117; *Dynacore Holdings Corp.*,

363 F.3d 1263, 1272; *Confident Techs.*, 2018 WL 6430539, *4 (dismissing induced infringement allegations for failure to plead an instance of direct infringement by joint infringement).

Assuming that HDI did adequately plead joint infringement by BBB and Google, HDI has not pleaded facts to show that BBB induced or contributed to customers' direct infringement of the Patents-in-Suit. HDI simply states, "BBB directs customers and other end-users . . . to visit [its website]" and use Google's reCAPTCHA framework. Amd. Comp. at ¶¶ 14, 16. As discussed above, however, while HDI pleads that customers use reCAPTCHA technology, HDI has not alleged that any customers' use of reCAPTCHA technology involves a customer directly infringing the patent; *i.e.*, the customer alone performing every step of the asserted method claim. The Amended Complaint itself contradicts this, by making allegations that these steps are performed instead by some combination of BBB and Google.

## V.    CONCLUSION

For the reasons set forth above, BBB respectfully requests that the Court dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). HDI has already amended its Complaint once and further leave to amend would be futile, as HDI cannot allege with good faith any plausible scenario that would amount to infringement by BBB.

August 3, 2020                              FISH & RICHARDSON P.C.

                                           /s/ Michael R. Ellis
                                           Neil J. McNabnay
                                           Texas Bar No. 24002583
                                           David B. Conrad
                                           Texas Bar No. 24049042
                                           Ricardo J. Bonilla
                                           Texas Bar No. 24082704
                                           Michael R. Ellis
                                           Texas Bar No. 24102726

                                           1717 Main Street, Suite 5000
                                           Dallas, Texas 75201
                                           mcnabnay@fr.com
                                           conrad@fr.com
                                           rbonilla@fr.com
                                           ellis@fr.com

                                           **Attorneys for Defendant**
                                           **Bed Bath & Beyond, Inc.**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 3, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

<div align="right">

*/s/ Michael R. Ellis*
Michael R. Ellis

</div>